UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GREAT LAKES TRANSPORTATION HOLDING, LLC
d/b/a/ METRO CARS,

      Plaintiff,

v.                                                                                    Case No. 12-10497

YELLOW CAB SERVICE CORPORATION OF
FLORIDA, INC., CULLAN MEATHE, METRO                        HON. AVERN COHN
CAB, LLC, METRO PRO LEASING, LLC, PALM
BEACH METRO TRANSPORTATION, LLC,
METRO TRANSIT, LLC, JACKSONVILLE
METRO TRANSPORTATION, LLC, and
PENINSULA TRANSPORTATION GROUP
ENTERPRISES, LLC,

      Defendants.

_____/


**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 49)**
**AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 48)**


**I. INTRODUCTION**

      This is a trademark infringement case.  Cullan Meathe and Gregory Eaton together

formed Michigan companies that provided transportation services in the Detroit-

Metropolitan area and used the trademark *METRO CARS*.  Some time later, Meathe, by

himself, formed Florida companies that provided similar services in Florida and used the

trademarks *METRO CARS* and *METRO CARS*FL.  Although Meathe was the sole owner

of the Florida companies, the Michigan and Florida companies shared management staff.

To finance their operations, Meathe and Eaton obtained a common loan and used the Michigan and Florida companies as collateral.  After the loan went into default, the bank foreclosed on both the Michigan and Florida companies.  Great Lakes Transportation Holding, LLC ("plaintiff"), a Michigan corporation partially owned by Eaton, purchased the assets of the Michigan companies at a public foreclosure sale.  Peninsula Transportation Group Enterprises, LLC ("PTG"), a Florida company owned by Meathe's relatives, purchased the assets of the Florida companies through a judicial foreclosure sale.  Plaintiff claims Meathe and PTG (collectively "defendants")[1], by using the marks *METRO CARS*, *METRO CAR*, and *METRO CARS_{FL}*, are infringing on its *METRO CARS* mark that it obtained at the Michigan foreclosure sale.

Although the parties have filed numerous papers, there are only two issues involved: first, whether defendants are the common law owners of the *METRO CARS_{FL}* mark; and, second, whether defendants' use of the marks is governed by a license agreement.  A determination of both issues is necessary to adjudicate whether plaintiff consented to defendants' use of the marks in question.  Now before the Court are defendants' motion for summary judgment on the affirmative defenses of laches and acquiescence (Doc. 49) and plaintiff's motion for partial summary judgment on count III, which claims trademark

---

[1] In addition to PTG, plaintiff is suing the following Florida companies that are now dissolved:
       (1) Yellow Cab Service Corporation of Florida, Inc. ("Yellow Cab");
       (2) Metro Cab, LLC ("Metro Cab");
       (3) Metro Pro Leasing, LLC ("Metro Pro");
       (4) Palm Beach Metro Transportation, LLC ("Palm Beach Metro");
       (5) Metro Transit, LLC ("Metro Transit"); and
       (6) Jacksonville Metro Transportation, LLC ("Jacksonville Metro").
These are the companies that were purchased by PTG.  The true corporate entity defendant is PTG.

infringement under 15 U.S.C. § 1114 of the Lanham Act (Doc. 48).[2]  For the reasons that follow, both motions will be denied.

## II. BACKGROUND

### A. Basic Background

#### 1. Formation of Metro Group

In 1990, Meathe and Eaton formed Metro Group Holding Company, Inc. (Metro Group), a Michigan company engaged in the business of for-hire ground transportation services.  Since 1999, Meathe owned 49% and served as vice president and secretary; Eaton owned 51% and served as president.  Meathe and Eaton later formed Metro Cars, Inc. (Metro Cars) as a subsidiary of Metro Group.  Daniel Ret (Ret) served as chief operating officer (COO) of Metro Cars and was responsible for the company's day-to-day operations.

Since the early 1990s, Metro Cars has used the mark *METRO CARS*.  The mark was registered with the U.S. Patent and Trademark Office (USPTO) on August 1, 1995, registration no. 1,908,853.  On December 9, 2005, Metro Cars filed a trademark application with the USPTO for the mark *METRO CARSFL*.  On July 10, 2007, the mark was registered, registration no. 3,261,698.

---

[2] Plaintiff's second amended complaint is in seven counts:
Count I          Federal Trademark Infringement/False Designation of Origin Under 15 U.S.C. § 1225(a)
Count II         Federal Trademark Dilution Under 15 U.S.C. § 1125(c)
Count III        Trademark Infringement Under 15 U.S.C. § 1114
Count IV         Unfair Competition Under Florida Law
Count V          Unjust Enrichment Under Florida Law
Count VI         Violation of Florida Statute § 501.201, et seq. (Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")
Count VII        Breach of License Agreement

Meathe remained 49% owner of Metro Group until early 2009, when the company's assets were sold in a UCC foreclosure sale.

## 2. Yellow Cab and Florida Operations

In 2004, Meathe began to form transportation companies in Florida.  He formed the following entities as 100% owner:

> Yellow Cab, organized in 2004
> Palm Beach Metro, organized in 2004
> Jacksonville Metro, organized in 2004
> Palm Beach Transportation, organized in 2004
> Jacksonville Transportation, organized in 2004
> Metro Cab, organized in 2005
> Metro Transit, organized in 2005
> Metro Pro, organized in 2008

Ret served as chief executive officer (CEO) of the Florida companies.

## 3. Use of the Marks by the Florida Companies

Since their inception, the Florida companies have used the *METRO CARS* and *METRO CARS$_{FL}$* marks.  The parties dispute whether the Florida companies were granted a license to use the marks.  Eaton says that he orally agreed to allow Meathe to use the *METRO CARS$_{FL}$* mark in exchange for a royalty of $10,000 per month.  He says this was later reduced to writing in 2006.  The record contains a written "Trademark License" agreement, which is undated, and signed by Ret as COO of Metro Cars and Gary Wilson as Vice President of Yellow Cab.

The written agreement acknowledges that Metro Cars owns the *METRO CARS* mark, and that at the time of the agreement, the application for the *METRO CARS$_{FL}$* mark was pending.  Schedule A of the agreement referenced a trademark application filed for the *METRO CARS$_{FL}$* mark on December 9, 2005.  The agreement states: "Metro Cars hereby

4

grants to Yellow Cab a non-exclusive, nontransferable, royalty-free license in the State of Florida only, to use the Mark – METRO CARS FL – in connection with the services identified in the pending application therefore, specifically, chauffeured car for hire." Further, the agreement says that the license was perpetual and could be terminated by either party upon reasonable written notice.  The agreement stated that, on termination, Yellow Cab agreed to discontinue all use of the *METRO CARS*FL mark.

### 4. Financing the Michigan and Florida Operations

On August 18, 2006, Metro Group, Yellow Cab, and their subsidiaries, obtained a loan[3] from the Bank of Montreal, as administrative agent for a group of three banks (Bank Group).  The loan was secured by the assets of the Michigan and Florida companies.  In addition, Meathe provided a personal guarantee for ten million dollars ($10,000,000.00).

After the loan went into default, by an excess of forty million dollars ($40,000,000.00), Bank Group foreclosed on the Michigan and Florida companies.

### a. Foreclosure Sale of Metro Group and the Michigan Companies

Bank Group first foreclosed on the Michigan companies.  A UCC foreclosure sale was held on July 13, 2009.  Metro Group and its subsidiaries' assets were auctioned, including the assets of Metro Cars.  Plaintiff made the highest bid at the foreclosure sale.

Plaintiff was formed on June 9, 2009 for the specific purpose of purchasing the assets of Metro Group.  Plaintiff is owned by three companies that are, in turn, owned by Eaton, Ret, and Gary Sakwa.  Plaintiff provides transportation services in the State of Michigan, and provides the same services through affiliate companies throughout the

---

[3] The parties have not identified the amount of the original loan and could not do so at oral argument.

United States, including Florida. Plaintiff acquired the *METRO CARS* mark through its July 13, 2009 purchase of the assets of Metro Group.

Since its acquisition of Metro Group through the foreclosure sale, plaintiff has used the *METRO CARS* mark to advertise nationwide its services on door panels, license plate frames, front plates of its vehicles, airport signs, brochures, newspaper and magazine advertisements, local publications, phone book listings, and the Internet. In 2010, plaintiff began offering chauffeured car-for-hire services nationwide through subcontracts with affiliate companies. Plaintiff grants licenses to affiliates to use the *METRO CARS* mark.

### b. Foreclosure Sale of Yellow Cab and the Florida Companies

On or about September 15, 2010, Bank Group foreclosed on the Florida companies through judicial action, and all of the companies' assets were sold. <u>Bank of Montreal v. Yellow Cab Service Corporation of Florida, Inc.</u>, No. 10-cv-00624 (N.D. Ill.). Through a settlement agreement, the assets of the Florida companies were sold to PTG, a company owned by the Jean Meathe Irrevocable Trust (98%) and Traver Meathe (2%). PTG provides transportation services in Florida and uses the *METRO CARS* and *METRO CARS*FL marks.

### 5. Plaintiff's Notice to Cease Using Marks

On November 23, 2009, plaintiff sent a letter to Yellow Cab demanding that defendants cease using the *METRO CARS* and *METRO CARS*FL marks within 14 days. Defendants refused to honor plaintiff's request, contending that they are the common law owners of the *METRO CARS*FL mark. The parties' attempted settlement negotiations failed and plaintiff brought this suit for trademark infringement in the Southern District of Florida.

6

Although defendants acknowledge receipt of the termination letter, defendants contest the validity of the licensing agreement.  Meathe says he never entered into any license agreement.  Further, he says Ret did not have authority to enter into the agreement on behalf of Metro Cars.

Defendants continue to use the *METRO CARS* and *METRO CARSFL* mark in Florida.

## B. Procedural Background

On February 12, 2010, plaintiff filed a six-count complaint against defendants in the United States District Court for the Southern District of Florida.  On August 13, 2010, plaintiff filed a motion for summary judgment on all six counts.  The Florida court denied the motion, finding that a genuine issue of material fact existed as to plaintiff's ownership of the *METRO CARS* and *METRO CARSFL* marks, whether defendants acquired a common-law claim to the marks, and whether there has been actual confusion.  A second amended complaint was filed on November 1, 2011.  On January 12, 2012, the Florida district court dismissed all state law claims and defendants' state-law counterclaims.  On January 30, 2012, after discovery closed and a jury had been selected, the Florida district court transferred the case to this Court.  After the case was transferred, on May 9, 2012, the Court denied plaintiff's motion for preliminary injunction.  The parties filed cross motions for summary judgment.

## III. STANDARD OF REVIEW

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of material

fact when "the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

(1986). The nonmoving party may not rest upon his pleadings; rather, the nonmoving

party's response "must set out specific facts showing a genuine issue for trial. Chappell

v. City of Cleveland, 585 F.3d 901, 906 (6th Cir. 2009). The Court "must construe the

evidence and draw all reasonable inferences in favor of the nonmoving party." Hawkins

v. Anheuser-Busch, Inc., 517 F.3d 321, 332 (6th Cir. 2008). Determining credibility,

weighing evidence, and drawing reasonable inferences are left to the trier of fact. See

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

## IV. DISCUSSION

### A.

Under 15 U.S.C. § 1114 of the Lanham Act,

> (1) Any person who shall, without the consent of the registrant-
> (a) use in commerce any reproduction, counterfeit, copy, or
> colorable imitation of a registered mark in connection with the
> sale, offering for sale, distribution, or advertising of any goods
> or services on or in connection with which such use is likely to
> cause confusion, or to cause mistake or deceive . . . shall be
> liable in a civil action by the registrant. . . .

In order to establish trademark infringement under § 1114, plaintiff must prove ownership

of the registered trademark, defendants' use of the mark in commerce without its consent,

and that defendants' use of the mark is likely to cause confusion. Hensley Mfg. v.

ProPride, Inc., 579 F.3d 603, 609 (6th Cir. 2009).

8

**B.**

Before transferring the case to this Court, the Florida district court denied plaintiff's motion for summary judgment and set the case for trial. The genuine issues of material fact that precluded the Florida court from entering summary judgment still exist; namely, whether defendants had consent to use plaintiff's marks.

Defendants say it is indisputable that they are the common law owners of the *METRO CARSFL* mark. To establish common law ownership of a trademark, a party must demonstrate "that its use of the mark was 'deliberate and continuous, not sporadic, casual or transitory.' " Circuit City Stores, Inc. v. CarMax, Inc., 165 F.3d 1047, 1054-55 (6th Cir. 1999). Plaintiff says defendants cannot prove common law ownership because their use of plaintiff's marks was governed by a license agreement.

Plaintiff's purchase of the Michigan companies at the foreclosure sale included any rights the companies had to enforce the *METRO CARS* and *METRO CARSFL* marks. The bill of sale included "patents, trademarks, trade styles, copyrights and all other intellectual property rights, including applications, registrations and licences therefor and all goodwill of the business." Likewise, defendant PTG's purchase of the Florida companies through the judicial foreclosure included any rights the Florida companies had acquired in the marks.

The record contains a clear factual dispute regarding the issue of consent to use the marks. The parties agree that Meathe's Florida companies began using the marks in 2004. Plaintiff has proffered evidence supporting its position that an oral license agreement, which was later reduced to writing, governed the use of the marks. The parties agree that an

9

undated "License Agreement" exists, which is signed by Ret as COO of Metro Cars and Gary Wilson as Vice President of Yellow Cab.  Ret and Wilson testified that a written license agreement was signed in 2006.  Plaintiff, by letter, purportedly terminated the license on November 23, 2009, by unequivocally demanding that Yellow Cab cease using its marks.

On the other hand, defendants have proffered evidence supporting their position that a license agreement never existed.  Meathe says there was never a license agreement. He says he never knew of, or authorized, the agreement, which he says he would have had to do for the agreement to be effective.  When Eaton saw the written agreement, he denied that the parties ever entered into any written agreement and said that the relationship was pursuant to an oral agreement.  Meathe also says that the signatories to the license agreement were not authorized to sign it.

A material factual dispute exists as to whether defendants obtained a common law right to use the marks, permission to use the marks under a license, and, if so, whether the licence was revocable, or any other circumstance which allows the defendants to continue using the marks.  Because a factual dispute exists, the Court cannot grant summary judgment on defendants' laches and acquiescence defenses or plaintiff's claim of infringement under the Lanham Act.  Notwithstanding the multiple papers since the case was transferred from Florida, the preexisting factual dispute has not gone away.

**V. CONCLUSION**

For the reasons above, defendants' motion for summary judgment is DENIED and

plaintiff's motion for partial summary judgment on count III is DENIED.


SO ORDERED.

s/Avern Cohn
Avern Cohn
United States District Judge

Dated:  October 10, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record
on October 10, 2012, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager